UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLO CAPRISTO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>POSTMASTER GENERAL, Megan J. Brennan,<br><br>　　　　　Defendant.<br>_____/ | No. C-15-1071 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 13)** |

　　　Plaintiff Polo Capristo, proceeding pro se, has filed suit against Defendant the Postmaster General, asserting employment discrimination based on race and/or national origin in violation of Title VII. Currently pending before the Court is the government's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** the motion to dismiss but gives Mr. Capristo leave to amend.

## I.　　FACTUAL & PROCEDURAL BACKGROUND

　　　In his complaint, Mr. Capristo alleges that he has been discriminated against while working at the U.S. Post Office. He identifies four incidents in particular.

　　　The first incident (hereinafter referred to as the "termination incident") occurred sometime prior to March 2013. Mr. Capristo's manager, Henry Orozco, fired him and told him that the reason why was "to prove to the rest of the transportation [department] that [Mr. Orozco] was expected to

be respected in his new position of manager with the department." Compl. at 3. Subsequently, with the help of the union, Mr. Capristo was rehired. *See* Compl. at 3.

The second incident (hereinafter referred to as the "yelling incident") took place on February 22, 2014. *See* Compl. at 7. It appears that, some time after the termination incident, Mr. Capristo was injured on the job and had to undergo surgery for a torn labral (shoulder). *See* Compl. at 3. On February 21, 2014, Gebinder Sighn (*sic*), a supervisor, told Mr. Capristo to do some work which Mr. Capristo believed would overwork his shoulder. *See* Compl. at 3. When Mr. Capristo refused to do the work, the supervisor called another supervisor, R.J. Bath, and "spoke to [Mr. Bath] in his native language so [that Mr. Capristo] could not understand what was said." Compl. at 3. The following day, February 22, 2014, Mr. Capristo went to the office to write out a statement concerning what had happened the day before. *See* Compl. at 3-4. While Mr. Capristo was working on his statement, Mr. Bath came over and "started yelling at [Mr. Capristo] in a very angry and hostile manner to stop [his] writing, [and] to leave the office because [Mr. Capristo] as a driver was not allowed to be in there." Compl. at 4.

The third incident (hereinafter referred to as the "speeding incident") occurred some months after the yelling incident. *See* Compl. at 8. Mr. Capristo was driving behind another postal employee and in front of a contractor. *See* Compl. at 4. After Mr. Capristo pulled forward, his manager, Keith Inouye, approached Mr. Capristo and said that he had been speeding. *See* Compl. at 4. When Mr. Capristo asked whether any of the other drivers had been confronted about speeding in the yard, Mr. Inouye responded, "[N]o, you're the only one speeding." Compl. at 4. When Mr. Capristo asked how Mr. Inouye could tell that he was speeding, Mr. Inouye said, "[Y]our engine was loud and fast." Compl. at 4. The following day, Mr. Inouye whispered to Mr. Capristo that "[he] again was speeding in the yard . . . [and that he could tell because his] engine was loud and fast." Compl. at 4. When asked about other drivers speeding, Mr. Inouye again said, "[N]o[,] you're the only one speeding." Compl. at 4.

The fourth incident (hereinafter referred to as the "time card incident") took place in February 2015. *See* Compl. at 4. Mr. Capristo's supervisor Eugenio asked to talk to him with another employee present. Eugenio "falsely accuse[d] [Mr. Capristo] of abusing (stealing) over

2

time, carrying [his] time card on [his] person, and taking two to three hour lunches." Compl. at 4. Mr. Capristo told Eugenio that the "situation [Eugenio] was bringing up was a matter of giving a stand up talk to the whole department and not to one's self by singling [Mr. Capristo] out of the entire transportation department." Compl. at 5.

Attached to Mr. Capristo's complaint is a decision issued by the EEOC on or about December 16, 2014. The decision reflects that, on May 29, 2014, Mr. Capristo filed an administrative complaint asserting employment discrimination on the basis of race. The administrative complaint was based on the yelling incident that took place on February 22, 2014. The complaint was dismissed for failure to state a claim on June 30, 2014. Mr. Capristo appealed to the EEOC but the EEOC affirmed. In its order, the EEOC noted that Mr. Capristo had the right to sue in federal court. Mr. Capristo thereafter filed the instant action on March 9, 2015.

## II.   DISCUSSION

The government has moved to dismiss Mr. Capristo's complaint on the following grounds: (1) that he failed to exhaust his administrative remedies and (2) that he has failed to state a claim for relief. The Court addresses each of these arguments in turn.

A.   Exhaustion of Administrative Remedies

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss based on a lack of subject matter jurisdiction. A motion brought under Rule 12(b)(1) can be either a facial attack or a factual one. "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2013). Here, the government is making a facial attack.

According to the government, subject matter jurisdiction is lacking in the instant case because, in order for a court to have subject matter jurisdiction over a Title VII claim, the plaintiff must have first exhausted his administrative remedies. *See Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (stating that "[t]o establish federal subject matter jurisdiction, a plaintiff is required to exhaust his administrative remedies before seeking adjudication of a Title VII claim"); *see also* 42

3

U.S.C. § 2000e-16(c). Based on the allegations in the complaint, Mr. Capristo did not exhaust his administrative remedies as to any of the alleged misconduct except for the yelling incident.

The Court agrees that, based on the complaint, it appears that Mr. Capristo filed an administrative charge for the yelling incident only (as reflected in the EEOC decision). Nothing indicates that Mr. Capristo filed an administrative charge for any of the other incidents, *i.e.*, the termination, the speeding, and/or the time card incidents. Thus, as the government contends, there is an exhaustion problem for the other incidents.

The Court acknowledges that, under Ninth Circuit law, an allegation of discrimination that is *not* included in an administrative charge may still be deemed exhausted if it is like or reasonably related to the allegations contained in the administrative charge. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). In the case at bar, that means, if the termination, speeding, and/or time card incidents were like or reasonably related to the yelling incident, then there would be no need for Mr. Capristo to file a separate administrative charge for the termination, speeding, and/or time card incidents. But there is an insufficient showing that the termination, speeding, and/or time card incidents are like or reasonably related to the yelling incident. Most notably, the other incidents involved supervisors different from those involved in the yelling incident and did not take place close in time to the yelling incident.[1] *See id.* (noting that factors to consider in determining whether incidents are like or reasonably related include "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred").

Accordingly, to the extent Mr. Capristo seeks relief for the termination, speeding, and/or time card incidents, his claim is barred because there is no indication that he properly exhausted his administrative remedies as to that alleged misconduct.

---

[1] Moreover, some of the incidents may be time barred. Under Title VII, a charge of discrimination must be filed within 300 days of the alleged incident. *See* 42 U.S.C § 2000e-5; *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) (stating that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

B. <u>Failure to State a Claim for Relief</u>

Because Mr. Capristo failed to allege that he exhausted his administrative remedies for the termination, speeding, and/or time card incidents, that leaves only the yelling incident as a possible basis for relief. As to the yelling incident, however, the government asserts that Mr. Capristo has failed to state a claim for relief because the allegations do not support there being (1) a discriminatory intent on the part of the Post Office or its agents; (2) severe or pervasive misconduct on the part of the Post Office or its agents; or (3) an adverse employment action taken by the Post Office or its agents.

Because Mr. Capristo is pro se, the Court provides him with some context on Title VII and what is needed to establish a violation of the statute. Title VII does not protect against all workplace misconduct. Rather, it addresses only adverse employment actions taken by an employer because of the employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. Thus, it is not enough that an employer simply single out an employee for mistreatment to cause that action to fall under Title VII. The action must be taken *because of* one of the characteristics listed in Title VII.

There are two common ways that a plaintiff can establish a Title VII violation: (1) that the employer subjected the plaintiff to an adverse employment action because of his or her race, color, religion, sex, or national origin or (2) that the plaintiff was subjected to a hostile work environment because of his or her race, color, religion, sex, or national origin. The former is known as a disparate treatment claim and the latter a hostile work environment claim.

For a disparate treatment claim, a plaintiff must show that a discriminatory reason motivated the defendant's decision to subject the plaintiff to an adverse employment action. *See, e.g.*, *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). A plaintiff can make out a prima facie case by showing "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). *See, e.g.*, *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002) (concluding that a complaint had

enough facts to survive a motion to dismiss when it stated that Korean workers were required to work longer hours than Mexican or American workers and that the plaintiff (who was Korean) was fired when he did not work those hours).

For a hostile work environment claim, a plaintiff must show "(1) that he [or she] was subjected to verbal or physical conduct of [*e.g.*] a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). *See, e.g.*, *Dominguez-Curry*, 424 F.3d at 1035 (concluding that a supervisor making "numerous demeaning comments about women in the workplace, including stating that 'women should only be in subservient positions'; that women 'have no business in construction'; that he 'would never work for a woman'; that 'he wished he could hire men to do [the] jobs'; that women in the Department were being paid more than they deserved; and that he wanted a man to fill the . . . position . . . [and]  exhibited hostility to women who took maternity leave, and . . . told sexually explicit jokes in the office" satisfies the requirement for verbal conduct of a sexual nature, and the requirement that the conduct be sufficiently severe or pervasive).

In the instant case, Mr. Capristo has failed to state a claim for relief based on the yelling incident, whether the claim is viewed as a disparate treatment claim or a hostile work environment claim.

1. Disparate Treatment Claim

To the extent Mr. Capristo asserts a disparate treatment based on the yelling incident, the claim suffers from multiple problems.  First, although Mr. Capristo claims that he was discriminated against on the basis of his race and/or national origin, he does not identify what his race or national origin is.

Second, he has not alleged any facts from which one could reasonably infer that any action taken against him (*e.g.*, the yelling) was because of his race or national origin.  Mr. Capristo does not allege, for example, that a supervisor shouted a racial epithet at him.  Nor does he allege that a

person outside of his protected class engaged in the similar conduct that he engaged in but was treated differently (*i.e.*, more favorably) by the supervisor(s).

Finally, even if the above hurdles could be overcome, Mr. Capristo has failed to allege an adverse employment action. Under Title VII, "adverse employment action" has a very specific meaning; it is an action that affects the employee's "compensation, terms, conditions, or privileges of employment." U.S.C. § 2000e-2(a)(1). Examples of adverse employment actions include termination, *see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir.2002); assignment of more burdensome work responsibilities, *see Kang*, 296 F.3d at 818-19; and forcible relocation of an employee's work space which changes the employee's working conditions. *See Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1125-26 (9th Cir. 2000). In contrast, making snide remarks to an employee and/or implying that the employee would be terminated is not enough to constitute an adverse employment action. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005). Here, the only asserted adverse employment action appears to be the fact that one of Mr. Capristo's supervisors yelled at him. But yelling is akin to making a snide remark; it does not rise to the level of a termination or a substantive change in work responsibilities. Furthermore, no Ninth Circuit precedent indicates that simply yelling at an employee constitutes an adverse employment action.

For all of the foregoing reasons, the Court finds that Mr. Capristo has failed to state a claim for relief for disparate treatment.

2. Hostile Work Environment Claim

To the extent Mr. Capristo asserts a hostile work environment based on the yelling incident, the claim also suffers from multiple problems. For example, as above, although Mr. Capristo claims that he was discriminated against on the basis of his race or national origin, he does not identify what his race or national origin is. In addition, Mr. Capristo has not alleged any allege facts to support his contention that his supervisors mistreated him because of his race or national origin. There was nothing in the remark that shows it was racial in nature.

Finally, as indicated above, only severe or pervasive misconduct can give rise to a hostile work environment. This standard is not without some teeth. *See, e.g.*, *Foster v. ScentAir Techs.,*

*Inc.*, No. 13-cv-05772-TEH, 2014 U.S. Dist. LEXIS 80532, at *10 (N.D. Cal. June 10, 2014) (noting that "occasional, isolated, sporadic, or trivial harassment" is not enough to give rise to a hostile work environment claim").

> For example, our court of appeals has held that "no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003).  In *Kortan v. California Youth Authority*, our court of appeals held that there was no hostile work environment as a matter of law even though a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor. 217 F.3d 1104, 1104-07.  Our court of appeals has held that such conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment as a matter of law.

*King v. City & County of San Francisco*, No. C 11-01857 WHA, 2012 U.S. Dist. LEXIS, at *20-21 (N.D. Cal. Sept. 6, 2012) (concluding that two events, one involving the n-word and the other a noose, which took place over the course of nine years, was not enough to give rise to a hostile work environment claim).  In the instant case, the alleged misconduct is one incident of yelling by a supervisor.  And as noted, nothing suggests this was race or national origin based verbal harassment.  If the conduct in *Vasquez* and *Kortan* could not support a hostile work environment claim, then, clearly, the conduct at issue in this case cannot either.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the government's motion to dismiss.  However, as Mr. Capristo is proceeding pro se and the Court cannot say at this juncture in the proceedings that an amendment would be futile, *see McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (stating that "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs"), the Court shall give him leave to amend **within 30 days of the date of this order**.

Mr. Capristo is forewarned that the Court is allowing him to amend to replead Title VII claims only (*i.e.*, Mr. Capristo cannot assert a brand new cause of action).  If Mr. Capristo amends

his Title VII claims, he must address the deficiencies identified by the Court above.  For example, for any alleged misconduct for which Mr. Capristo seeks relief, he must show that he exhausted his administrative remedies.  If Mr. Capristo asserts a disparate treatment claim, he must show that (1) he was subjected to an adverse employment action (*e.g.*, a termination) (2) *because of* his membership in a protected class.  If Mr. Capristo asserts a hostile work environment claim, he must show that (1) he was subjected to unwelcome conduct sufficiently severe or pervasive to alter the terms or conditions of his employment (2) *because* of his membership in a protected class.

Finally, Mr. Capristo is also advised that any allegations he makes in an amended complaint must be made in good faith, as required by Federal Rule of Civil Procedure 11.  *See, e.g.*, Fed. R. Civ. P. 11(b)(3), (c) (providing that, by presenting a pleading to the court, the party certifies that "the factual contentions have evidentiary support" and that a party may be sanctioned for failure to comply with the rule).  Mr. Capristo must have a good faith basis for any factual allegations made in the complaint.

If Mr. Capristo does not timely file an amended complaint, then the dismissal of the complaint shall be deemed with prejudice and the Clerk of the Court shall enter judgment and close the file in the case.

This order disposes of Docket No. 13.

IT IS SO ORDERED.

Dated: July 17, 2015

_____
EDWARD M. CHEN
United States District Judge